UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Prealou J. Roberts

    v.                                    Civil No. 09-cv-34-PB

United States Marshals Service, et al.

**REPORT AND RECOMMENDATION**

Pro se plaintiff Prealou J. Roberts has filed a complaint, pursuant to 42 U.S.C. § 1983, alleging that he was denied adequate medical care and subjected to unnecessary surgery in violation of his rights under the Fourteenth Amendment to the United States Constitution (document no. 1) and New Hampshire law. Seeking injunctive and monetary relief, he brings this action against the following individuals and entities: United States Marshals Service; Wentworth Douglas Hospital; Prime Care Medical Services[1]; Strafford County Department of Corrections

---

[1] Roberts does not explain who he intends to sue by naming Prime Care Medical Services as a defendant in this action. For purposes of preliminary review, I will assume that Prime Care Medical Services is an agency that contracts with the SCDOC to provide medical care to inmates who are in custody of the SCDOC.

("SCDOC")[2]; and Tracey Warren, an employee of the SCDOC.  I liberally construe the claims against the United States Marshals Service, a federal agency, to be brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).

The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted.  See 28 U.S.C. § 1915A; U.S. District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).  For the reasons stated below, I find that Roberts has alleged the following claims: (1) Fourteenth Amendment claims, premised upon the denial of adequate medical care, against Warren and Prime Care Medical Services; and (2) state law negligence claims against Prime Care Medical Services, Wentworth Douglas Hospital and an unnamed surgeon employed by that hospital.  I recommend dismissal of all remaining claims.

Also filed is a motion to compel release of medical records (document no. 9), motion to compel discovery (document no. 14), and motion to appoint counsel (document no. 10), which I

---

[2] I liberally construe the claims against the SCDOC to be brought against Warren Dowaliby in his representative capacity as Superintendent of the SCDOC.

recommend be denied without prejudice to being renewed at a later date should circumstances warrant renewal. As Roberts has been granted in forma pauperis status, I recommend that his "motion to proceed in forma pauperis for request of counsel" (document no. 11) be denied as moot.

**Standard of Review**

In conducting a preliminary review, the court liberally construes pro se pleadings, however inartfully pleaded. See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party). See also Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that pro se pleadings are given fair and meaningful consideration.

**Background**

Roberts is an inmate at the Otisville Federal Correctional Institution in Otisville, New York.[3]  This action arises from events that occurred in August 2007 while he was in custody of the SCDOC in Dover, New Hampshire.  At that time, Roberts allegedly was taking a medication described as Elavil[4].  He claims that prison officials followed a policy of crushing his

---

[3] This action was transferred from the United States District Court for the Southern District of New York on the basis that a substantial part of the events or omissions giving rise to this action allegedly occurred in New Hampshire.

[4] I liberally construe Roberts' reference to Evail to mean Elavil.  "Elavil is a trademark for amitriptyline hydrochloride, a tricyclic antidepressant sometimes used for the treatment of chronic pain." Dwyer v. Metropolitan Life INc. Co., 4 Fed. Appx. 133 (citing Dorland's Illustrated Medical Dictionary, 1576 (28th ed. 1994)).

medication, which caused him to stop taking his medication. He allegedly reported the problem to Warren, however, she failed to remedy the problem or take any corrective action.

Roberts further alleges that while he was confined at the SCDOC in August 2007, he was admitted to Wentworth Douglas Hospital where he was subjected to two unnecessary surgeries that were performed without his consent. First, he claims that he underwent a biopsy of a growth on his spleen and discovered afterwards that the surgeon had removed his entire spleen. Second, Roberts claims that a polyp was removed from his vocal cord. He alleges that the United States Marshals Service, Prime Care Medical Services and Warren, in her capacity as Head of the SCDOC Medical Department, allowed Wentworth Douglas Hospital to perform the unnecessary surgeries without Roberts' consent. He now brings this action, alleging that defendants' acts and omissions constitute a denial of adequate medical care in violation of his rights under federal and state law.

**Discussion**

I.   Bivens Claims

Roberts broadly alleges that the United States Marshals Service permitted employees of Wentworth Douglas Hospital to perform two unnecessary surgeries without his consent. I

liberally construe his claims to be brought pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 397 (1971).

The Supreme Court has declined to imply a Bivens action against federal agencies or federal agents acting in their official capacities. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471 (1994); <u>accord</u> <u>Steele v. Fed. Bureau of Prisons</u>, 355 F.3d 1204, 1214 (10th Cir. 2003) (holding that Bivens actions may not be filed against federal agencies or federal agents acting in their official capacities); <u>Hatten v. White</u>, 275 F.3d 1208, 1210 (10th Cir. 2002) (same); <u>Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000) ("It is well settled that a Bivens action will not lie against an agency of the federal government."). Here, Roberts names only a federal agency without identifying an individual defendant. Because the United States Marshals Service is a federal agency and, therefore, is not an appropriate defendant in a Bivens action, <u>see</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 486-486 (1994), I recommend dismissal of all claims against the United States Marshals Service.

II. <u>Section 1983 Claims</u>

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law. <u>See</u> 42

U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981); Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997). In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997). Because Roberts alleges a violation of federal constitutional law, his suit arises under Section 1983.

    A.   Denial of Adequate Medical Care

It appears that Roberts was a pretrial detainee at all times relevant to this action. While the Fourteenth Amendment protects pretrial detainees from denial of adequate medical care, the analysis applied to such claims is practically identical to the Eighth Amendment standard of deliberate indifference. See Brown v. Budz, 398 F.3d 904, 910 (7th Cir. 2005). See also Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002) (holding that pretrial detainees are protected under the Fourteenth Amendment Due Process Clause, rather than the Eighth Amendment, but are afforded the same Eighth Amendment standards).

The Eighth Amendment protects convicted inmates from prison officials acting with deliberate indifference to their serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 831 (1993).

To state an Eighth Amendment claim premised on inadequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 97.  To be found deliberately indifferent, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. See also Farmer, 511 U.S. at 837.  Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison personnel "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle, 429 U.S. at 104-05.  "A 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  See Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 17-18 (1st Cir. 1995)(quoting Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990).

   Construed liberally, the complaint in this action alleges the minimal facts necessary to state a claim for the denial of adequate medical care against Warren and Prime Care Medical Services.  First, Roberts has described a serious medical need,

namely that while confined at the SCDOC he suffered from both a growth on his spleen that required a biopsy and a polyp on his vocal cord.  Second, he alleges deliberate indifference with respect to the defendants by alleging that once they knew of his medical condition they nevertheless denied him adequate medical care and/or subjected him to unnecessary surgery.  Specifically, Roberts alleges that Prime Care Medical Services and Warren, in her capacity as Head of the SCDOC Medical Department, allowed Wentworth Douglas Hospital to perform two unnecessary surgeries without his consent.  The surgeries ostensibly included the removal of Roberts' entire spleen and the removal of a polyp from his vocal cord.

   If true, the allegations may demonstrate that the actions by Warren and Prime Care Medical Services prevented Roberts from receiving adequate care for a serious medical condition and/or that he was subjected to unnecessary surgery.  Because Roberts' allegations are sufficient to state a claim under the Eighth Amendment, I find that his allegations are sufficient to state a claim under the Fourteenth Amendment.  Accordingly, I find that he has stated Fourteenth Amendment claims, premised upon the denial of adequate medical care, against Warren and Prime Care

Medical Services.[5]  To the extent Roberts intends to allege similar Fourteenth Amendment claims against Dowaliby and the SCDOC, I conclude that he has failed to allege sufficient predicate facts and, therefore, recommend dismissal of such claims.

B. Denial of Medication

Construed liberally, the complaint alleges a Fourteenth Amendment claim against Warren based on the denial of medication. While confined at the SCDOC, Roberts allegedly was prescribed a medication identified as Elavil.  He alleges that the SCDOC's policy of crushing his medication effectively forced him to stop taking the medication.  He further alleges that he reported the problem to Warren but that she failed to remedy the problem or

---

[5] I presume that Prime Care Medical Services is a private health care provider that contracts with the SCDOC to provide its inmates with medical services.  Although Prime Care Medical Services may be a private entity and ordinarily not subject to liability under Section 1983, I find that it may be held accountable for constitutional deprivations arising from medical care provided at the SCDOC by virtue of its contractual relationship.  See Lewis v. Law-Yone, 813 F. Supp. 1247, 1254 (N.D. Tex. 1993) (explaining how a private party may be so closely aligned with a liable governmental entity that it may fairly be accorded the liability of that entity).  See also West v. Atkins, 487 U.S. 42, 56 (1988) (finding that a private physician who contracted to provide medical services to a state prison on a part-time basis acted under color of state law for purposes of Section 1983 when treating an inmate's injury).

take any corrective action. Even construed liberally, the complaint fails to allege sufficient predicate facts to state a cognizable claim against Warren. Roberts has not identified the condition for which the medication was prescribed. Nor has he identified any injury resulting from the denial of medication or any other act or omission by Warren. Accordingly, I recommend that the Fourteenth Amendment claim against Warren, premised upon the denial of medication, be dismissed.

III. Municipal Liability

Named as a defendant in this action is the SCDOC, a municipal entity. Municipalities and local government entities are "persons" within the meaning of Section 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). A municipal entity cannot be held liable under Section 1983 on a theory of *respondeat superior* or vicarious liability; rather the municipality itself must proximately cause the constitutional injury, through promulgation or tacit approval of a policy or custom. See Canton v. Harris, 489 U.S. 378, 385 (1989).

In this action, if Roberts intends to pursue claims against the SCDOC he must, at a minimum, allege that the constitutional deprivations were the product of a municipal custom or policy. Even liberally construing the complaint, I cannot reasonably

conclude that the wrongful conduct ascribed to the defendants was the product of any unconstitutional municipal custom or policy. Instead, the complaint plainly alleges that the wrongful conduct to which Roberts was subjected resulted from the actions taken by individual defendants and not as the result of a policy statement, ordinance, regulation or officially adopted decision. See Monell, 436 U.S. at 690.  Accordingly, I conclude that the complaint fails to state a viable claim premised upon municipal liability and, therefore, recommend that the SCDOC be dismissed from this action.

Construed liberally, the complaint also names Dowaliby, in his representative capacity as Superintendent of the SCDOC, and Warren, in his or her official capacity as an officer of the SCDOC.  Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. See also Brandon v. Holt, 469 U.S. 464, 471 (1984)(suits against parties in their official capacities treated as suits against the municipality).  Because I find no municipal liability as to the SCDOC, I extend that reasoning to Dowaliby and Warren and conclude that any official capacity claims against them must fail.

IV.  Request for Criminal Prosecution

Roberts requests this court to initiate criminal prosecutions against the defendants, pursuant to 42 U.S.C. § 1983, for constitutional deprivations that he allegedly suffered as a result of being denied adequate medical care and being subjected to unnecessary and unauthorized surgeries.

As explained above, to state a claim under Section 1983, a plaintiff must demonstrate a violation of the United States Constitution or federal law.  See 42 U.S.C. § 1983; Parratt, 451 U.S. at 535; Rodriguez-Cirilo, 115 F.3d at 52. 1997).  There is no constitutional right to have someone criminally prosecuted. See Oliver v. Collins, Civil Action No. H-09-0749, 2009 WL 960187, slip op. at *3 (S.D. Tex. April 7, 2009).  "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).  Thus, Roberts' request for criminal prosecution is without an arguable basis in law.  See Oliver, 2009 WL 960187, slip op. At 3.  Accordingly, I recommend that his claim be dismissed for failure to state a claim upon which relief may be granted.

V.   State Law Claims

   A.   Claims Against Prime Care Medical Services

   Construed liberally, the complaint alleges state law negligence claims against Prime Care Medical Services, Wentworth Douglas Hospital and an unnamed surgeon employed by that hospital.  Roberts appears to allege that by denying him adequate medical care and subjecting him to two unnecessary surgeries without his consent, defendants' actions constitute negligence under New Hampshire law.

   The state law claim against Prime Care Medical Services allegedly stems from the injuries Roberts sustained as a result of being denied adequate medical care.  His state law claim, therefore, appears to be so related that it forms part of the "same case or controversy" of his Fourteenth Amendment claim.  See  28 U.S.C. § 1367(a) (providing for supplemental jurisdiction over claims that are so related they form part of the same case or controversy).  Accordingly, I conclude that this court may exercise supplemental jurisdiction over the state law negligence claims against Prime Care Medical Services.

   B.   Claims Against Wentworth Douglas Hospital
        and the Unnamed Surgeon

   Construed liberally, the complaint invokes the diversity

jurisdiction of this court, pursuant to 28 U.S.C. § 1332, as an independent basis for asserting state law negligence claims against Wentworth Douglas Hospital and an unnamed surgeon employed by that hospital. Where, as here, a plaintiff invokes diversity jurisdiction, a complaint must allege complete diversity of citizenship between plaintiff and defendants as well as an amount in controversy in excess of $75,000, exclusive of interest and costs. See 28 U.S.C. § 1332. See also Straughn v. Delta Air Lines, Inc., 170 F. Supp. 2d 133, 146 (D.N.H. 2000)(citations omitted). "Diversity jurisdiction exists only when there is complete diversity, that is, when no plaintiff is a citizen of the same state as any defendant." Gabriel v. Preble, 396 F.3d 10, 13 (1st Cir. 2005).

Here, Roberts alleges an amount in controversy in excess of $75,000. He also alleges complete diversity of citizenship between the parties. The defendants in this action appear to be citizens of New Hampshire. Roberts is incarcerated in New York and upon his release from prison allegedly intends to reside in Maine. Where a prisoner intends to live in another state upon his release from prison and is assigned to a prison in that state, his domicile becomes that state. See Smith v. Cummings, 445 F.3d 1254, 1259-1260 (10th Cir. 2006). Factors to be

considered in determining domicile include the prisoner's declaration of his intentions, the manner in which he has ordered his personal and business transactions and any other factors that are relevant to the corroboration of his statements.  Id.  While Roberts has not been assigned to a prison in Maine, he alleges that upon his release from prison he intends to live in Maine where he alleges he will have custody of his two-year-old daughter.  For purposes of preliminary review and accepting the allegations in the complaint as true, I will presume that Roberts is a resident of Maine.

For the foregoing reasons, I conclude that the parties to this action are diverse.  Accordingly, I find that Roberts has pled diversity jurisdiction under 28 U.S.C. § 1332 and that this court has jurisdiction over his state law negligence claims against Wentworth Douglas Hospital and the unnamed surgeon.[6]

---

[6]If Roberts wishes to pursue claims against the unnamed surgeon, he will have to obtain his or her full name through discovery and appropriately move to amend the complaint.  He can serve the named defendants with interrogatories to obtain the full names of the unnamed defendant pursuant to Fed. R. Civ. P. 33(a)(1) (providing, in part, that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. . . . )

Pursuant to Fed. R. Civ. P. 33(b)(1) (A) and (B), the interrogatories must be answered by the party to whom they are

VI.   Motion for Appointment of Counsel

Roberts moves for appointment of counsel (document no. 10). To justify appointment of counsel, an indigent litigant must show that exceptional circumstances exist, such that without counsel the litigant most likely would be unable to obtain due process of the law.  See DesRosiers v. Moran, 949 F.2d 15, 23-24 (1st Cir. 1991).  Both the type and complexity of the case and the ability of the individual bringing the claim must be evaluated by a court in determining whether exceptional circumstances exist which warrant the appointment of counsel.  Id.  Here, Roberts has not demonstrated an inability to litigate or other exceptional circumstances to justify the appointment of counsel.  To the contrary, he has filed an articulate complaint in which he has presented his claims clearly and effectively.  At this preliminary stage in the proceedings, appointment of counsel does not appear to be necessary.  Having considered his circumstances and the applicable law regarding his rights to legal representation, I recommend that his motion be denied without

---

directed or, "if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party."  Roberts is further instructed to forward a separate summons to this court with each defendant's proper name.

prejudice to its being renewed at a later date should circumstances warrant renewal.

## Conclusion

For the reasons stated above, I find that Roberts has alleged the following claims: (1) Fourteenth Amendment claims, premised upon the denial of adequate medical care, against Warren and Prime Care Medical Services; and (2) state law negligence claims against Prime Care Medical Services, Wentworth Douglas Hospital and an unnamed surgeon employed by Wentworth Douglas Hospital.  I recommend dismissal of all remaining claims.

I further recommend that Roberts' motion to compel release of medical records (document no. 9), motion to compel discovery (document no. 14) and motion to appoint counsel (document no. 10) be denied without prejudice to being renewed at a later date should circumstances warrant renewal.  As Roberts has been granted in forma pauperis status, I recommend that his "motion to proceed in forma pauperis for request of counsel" (document no. 11) be denied as moot.  Accordingly, by separate order issued simultaneously herewith, I authorize the above viable claims to proceed.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all

purposes to be the claims raised in the complaint.  If the plaintiff disagrees with the identification of the claims herein, he must do so by objection filed within ten (10) days of receipt of this report and recommendation, or he must properly move to amend the complaint.

Any further objection to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); see also Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

                                          /s/ James R. Muirhead
                                          James R. Muirhead
                                          United States Magistrate Judge

Date: April 30, 2009

  cc: Prealou J. Roberts, pro se