UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Prealou J. Roberts,
     Plaintiff

     v.                                    Case No. 09-cv-34-SM
                                           Opinion No. 2011 DNH 051
Wentworth-Douglass Hospital,
PrimeCare Medical, Inc.,
and Tracy Warren, R.N.,
     Defendants

**O R D E R**

Pro se plaintiff, Prealou Roberts, brings this action seeking damages for alleged violations of his constitutionally protected rights.  See generally 42 U.S.C. § 1983.  He also claims he was the victim of medical malpractice.  Specifically, Roberts says that while he was a pretrial detainee housed at the Strafford County Department of Corrections ("SCDOC"), defendants denied him adequate medical care and subjected him to unnecessary surgery.

Pending before the court are two dispositive motions: a motion to dismiss, filed by Wentworth-Douglass Hospital; and a motion for summary judgment, filed by PrimeCare Medical, Inc. ("PrimeCare") and Tracy Warren, R.N.  For the reasons discussed below, those motions are granted.

**Background**

Because Roberts failed to object to either of the pending dispositive motions, the court must take as admitted the factual statement recited in Primecare's motion for summary judgment, as supported by the attached exhibits. See Local Rule 7.2(b)(2) ("All properly supported material facts set forth in the moving party's factual statement shall be deemed admitted unless properly opposed by the adverse party."). See also Cordi-Allen v. Halloran, 470 F.3d 25, 28 (1st Cir. 2006); McCrory v. Spigel (In re Spigel), 260 F.3d 27, 31 (1st Cir. 2001). In particular, the court has drawn extensively from the unrebutted affidavit of Tracy Warren (document no. 53-2).

In 2006, Roberts was incarcerated at the SCDOC, as a pretrial detainee.[1] In May of that year, he complained of having coughed up blood and was referred out of the facility for a chest CT scan. A radiologist (who is not a party to this litigation) read the CT scan and arrived at the following differential diagnosis: splenic hematoma, hemangioma, sarcoid, lymphoma, or metastasis. She suggested that Roberts undergo clinical testing

---

[1] There is some confusion as to whether the events in question took place in 2006 or 2007. In his complaint, Roberts says it was 2007, but concedes that he is uncertain. See Complaint at 2. But, all events referenced in the affidavit of Tracy Warren (document no. 53-2 ) took place in 2006. The court need not resolve that potential dispute in order to address the pending motions.

to confirm (or contradict) her impressions.  Approximately three weeks later, Roberts was found unresponsive in his cell and transported to Wentworth-Douglass Hospital.  He was eventually stabilized and discharged the following day.

On July 5, 2006, Roberts went to Wentworth-Douglass Hospital to consult with a surgeon about the lesions that were found on his spleen.  The consulting surgeon's notes indicate that he suspected Roberts had lymphoma and recommended a laparoscopic splenectomy - a surgical procedure during which part or all of the spleen is removed.  Those notes also indicate (though Roberts apparently denies) that the consulting physician discussed the procedure and its risks at length with Roberts and that Roberts consented to the procedure.  Surgery was performed on August 4, 2006, and Roberts remained hospitalized until August 18.

Following his surgery and while recuperating at Wentworth-Douglass Hospital, Roberts was seen by a pulmonologist, who noted that Roberts had a vocal cord polyp and recommended that he see an Ear, Nose and Throat specialist.  Accordingly, on November 20, 2006, Roberts was transported to see an ENT, for evaluation.  An endoscopic examination revealed bilateral lesions on his vocal cords.  And, on December 20, 2006, Roberts underwent surgery.  The hospital's records include an informed consent form,

apparently signed by Roberts, tending to establish that he was informed of the risks associated with the proposed procedure and that he consented to it.

As construed by the Magistrate Judge, Roberts' complaint advances two types of claims:

> (1) Fourteenth Amendment claims, premised upon the denial of adequate medical care, against Warren and PrimeCare Medical Services; and (2) state law negligence claims against PrimeCare Medical Services [and] Wentworth-Douglass Hospital.

Report and Recommendation (document no. 16) at 18. In essence, Roberts claims he was subjected to unnecessary surgical procedures - procedures he says were performed without his consent. On July 22, 2009, the court stayed Roberts' state law medical negligence claims against PrimeCare and Wentworth-Douglass and, pursuant to N.H. Rev. Stat. Ann. ("RSA") 519-B:4, referred the matter to the New Hampshire medical review panel. But, as described by the panel, Roberts' claims were dismissed after he repeatedly failed to comply with panel orders to provide relevant discovery and to disclose an expert witness (which is necessary, under New Hampshire law, to prove a medical negligence claim).

> This issue has a significant history. Following a telephonic structuring conference, a structuring order issued November 10, 2009 which in part <u>ordered</u>

<u>plaintiff's expert disclosure</u> by March 1, 2010 and completion of all discovery by June 1, 2010. A panel hearing was scheduled by the court for July 6, 2010. On or about January 8, 2010 WDH filed a Motion to Compel Discovery based on plaintiff's failure to properly respond to interrogatories served on him by WDH. On February 24, 2010 the undersigned conducted a telephonic hearing on that motion and issued an order dated March 1, 2010 which required the plaintiff to provide complete written answers to a number of interrogatories, excused him from answering others, and required plaintiff to execute and return certain authorizations requested by WDH. <u>The plaintiff was ordered to comply with this order by March 15, 2010</u>, a <u>date which was selected by the plaintiff</u>. (A copy of the March 1, 2010 order is attached.)

On or about April 14, 2010 WDH filed a Motion for Dismissal of Panel Proceeding again based on <u>plaintiff's multiple failures to comply with discovery orders</u> <u>including a failure to provide an expert disclosure</u>, incomplete interrogatory answers and a failure to provide the signed authorizations. The plaintiff again failed to object. That motion was joined by defendants PrimeCare Medical Inc. and Tracy Warren, RN. <u>A record hearing on this motion was held at the US District Court on May 14, 2010 at which the plaintiff appeared and represented himself</u>. An order issued May 14, 2010 (copy attached) denying the motion to dismiss without prejudice and required the plaintiff to provide complete interrogatory answers and certain records by June 1, 2010, provide completed medical authorizations by May 20, 2010, and provide a complete expert disclosure by June 15, 2010. Paragraph 6 of that order noted (and the record of the hearing will verify) that <u>these dates were agreed to by the plaintiff and he was clearly advised by the undersigned as panel chair on several occasions that his failure to comply with this order would result in a dismissal of his action if requested by the defendants</u>.

Based on WDH's renewed motion to dismiss and the amendment to which the plaintiff has not objected it appears that the <u>plaintiff has completely failed to comply with the order of March 14, 2010</u>.

5

Roberts v. Wentworth-Douglass Hosp., Order of the Medical Review Panel (Oct. 14, 2010) (document no. 48-1) (emphasis supplied). Given plaintiff's repeated failure (or refusal) to comply with discovery orders, and pursuant to RSA 519-B:4 VII(a), the Medical Review Panel dismissed Roberts' claims, with prejudice.

Wentworth-Douglass Hospital now moves to dismiss Roberts' claims, pointing out that, as he did before the medical panel, Roberts has failed to timely disclose a medical expert. Accordingly, says Wentworth-Douglass, he cannot, as a matter of New Hampshire law, succeed on his state medical negligence claim, nor can he succeed on his constitutional claims. PrimeCare and Tracy Warren move for summary judgment, advancing the same argument: given his failure to disclose an expert medical witness, Roberts cannot prevail on any of his claims. As noted above, Roberts has not responded to either motion.

**Discussion**

I. Roberts' Constitutional Claim.

In order to prevail on a section 1983 claim for medical mistreatment, an inmate must show that prison officials demonstrated "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test

has both objective and subjective (state-of-mind) components.
See DesRosiers v. Moran, 949 F.2d 15, 18 (1st Cir. 1991).[2]

With regard to the objective component of the deliberate indifference test, the inmate must show that he or she has suffered a serious deprivation of a fundamental right or basic human need. See DesRosiers, 949 F.2d at 18. As the Supreme Court has observed, the Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citation and internal quotation marks omitted). And, in Farmer v. Brennan, 511 U.S. 825 (1994), Justice Souter explained the state-of-mind element of deliberate indifference in the context of an Eighth Amendment claim. Id. at 834-47. In short, a prison official is liable "only if he knows that inmates face a substantial risk of serious

---

[2] At the time of his alleged injuries, Roberts says he was a pretrial detainee. Accordingly, the constitutional obligations defendants owed to him flow from the provisions of the Fourteenth, rather than the Eighth Amendment. That is, however, a distinction without a significant difference, as the standard by which defendants' conduct is measured is essentially the same under the Eighth and Fourteenth Amendments. See, e.g., Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002) ("Pretrial detainees are protected under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment; however, the standard to be applied is the same as that used in Eighth Amendment cases."). See also City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).

harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." Id. at 838.

Accordingly, an Eighth Amendment medical mistreatment claim cannot be premised upon a theory of simple negligence or even medical malpractice; a medical care provider's conduct must go beyond negligence in diagnosing or treating a prisoner's medical condition. See Estelle, 429 U.S. at 105-06. Similarly, a constitutional violation does not occur merely because a prisoner happens to disagree with a nurse's or a physician's decision regarding the proper course of medical treatment. See, e.g., Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007) ("[S]ubstandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation."); Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993) ("The courts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment, or to conclude that simple medical malpractice rises to the level of cruel and unusual punishment.").

Instead, to violate the Eighth Amendment - that is, to constitute cruel and unusual punishment - the "care provided must have been so inadequate as to shock the conscience," Feeney v. Corr. Med. Servs., 464 F.3d 158, 162 (1st Cir. 2006) (citations and internal punctuation omitted), or "constitute 'an unnecessary and wanton infliction of pain,' or be 'repugnant to the conscience of mankind.'" Estelle, 429 U.S. at 105-06 (citations omitted).

Here, the medical treatment provided to Roberts was not so obviously outrageous or malicious that a lay trier-of-fact could reasonably conclude that it violated either the Eighth or Fourteenth Amendments. So, to prevail on his constitutional claims, Roberts must provide expert medical testimony. See, e.g., Robinson v. Hager, 292 F.3d 560, 564 (8th Cir. 2002); Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987). As this court recently observed:

> This court lacks the medical training and expertise necessary to determine, in the absence of expert opinion evidence, whether the medical judgment exercised by the defendant physicians fell below an acceptable standard of professional care, much less that the medical care provided to [plaintiff] was so substandard as to implicate the Eighth Amendment.
>
> * * *
>
> If [plaintiff] expects to prevail at trial on his constitutional and/or state tort claims in this case,

9

>he will need to present expert medical witness testimony.

Boudreau v. Englander, 09-cv-247-SM, 2010 DNH 088 (D.N.H. May 24, 2010). See also Smith v. Wrenn, 07-cv-408-SM, 2009 DNH 091 (D.N.H. June 23, 2009) ("Absent expert medical testimony suggesting that defendants' treatment of Smith was so far below acceptable medical standards as to constitute an unnecessary and wanton infliction of pain or be repugnant to the conscience of mankind, Smith cannot prevail on his Eighth Amendment claim on the undisputed facts.").

So it is in this case. Roberts has failed to disclose an expert witness, the time for doing so has passed, and he has not sought an extension of that deadline - in fact, he has not even responded to defendants' pending motions. And, absent expert medical testimony suggesting that defendants' treatment of him was so far below acceptable medical standards as be to repugnant to the conscience of mankind, or that it amounted to an unnecessary and wanton infliction of pain, Roberts cannot prevail on his constitutional claims.[3]

---

[3] One can easily imagine countless scenarios in which a defendant's conduct might be so outrageous and so obviously undertaken either with intent to injure an inmate or with deliberate indifference to the inmate's well-being that expert medical testimony would not be necessary. This, however, is not one of those cases.

II.  <u>Roberts' State Law Malpractice Claim</u>.

Under New Hampshire law, a plaintiff cannot prevail on a medical malpractice claim without expert testimony as to the applicable medical standard of care and causation.

> In any action for medical injury, the plaintiff shall have the burden of proving by affirmative evidence which <u>must include expert testimony</u> of a competent witness or witnesses:
>
> (a)  The standard of reasonable professional practice in the medical care provider's profession or specialty thereof, if any, at the time the medical care in question was rendered; and
>
> (b)  That the medical care provider failed to act in accordance with such standard; and
>
> (c)  That as a proximate result thereof, the injured person suffered injuries which would not otherwise have occurred.

RSA 507-E:2 I (emphasis supplied).  Because Roberts has failed to disclosed a medical expert, he cannot, as a matter of law, prevail on his state law medical malpractice claims.

## Conclusion

For the foregoing reasons, as well as those set forth in defendants' memoranda, the motion to dismiss filed by Wentworth-Douglass Hospital (document no. 52) and the motion for summary judgment filed by PrimeCare Medical, Inc. and Tracy Warren

(document no. 53) are granted. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 29, 2011

cc: Prealou J. Roberts, pro se
Kenneth C. Bartholomew, Esq.
Sarah S. Murdough, Esq.